CYPRIANO MUNIZ ET AL. *v.* HENRY R. KRAVIS ET AL. (AC 18356)

Schaller, Hennessy and Dupont, Js.

Argued May 30—officially released September 5, 2000

*David J. Ordway*, for the appellant (plaintiff Mercedes Muniz).

*Harold R. Burke*, for the appellees (defendants).

*Opinion*

DUPONT, J. The plaintiff Mercedes Muniz[1] appeals from the judgment of the trial court rendered following the granting of the defendants' motion to strike the

---

[1] The appeal was withdrawn as to the named plaintiff, Cypriano Muniz. We refer in this opinion to the plaintiff Mercedes Muniz as the plaintiff.

plaintiff's amended complaint.[2] On appeal, the plaintiff claims that the court improperly determined that she failed to demonstrate the requisite elements of a cause of action for (1) intentional infliction of emotional distress, as claimed in count three of the amended complaint, and (2) unfair trade practices pursuant to the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., as claimed in count eight of the amended complaint. We affirm the judgment of the trial court.

The relevant allegations of the plaintiff's amended complaint follow. The defendants Henry R. Kravis and Caroline Roehm[3] were officers of the defendant Weatherstone Corporation. The business of the corporation was carried on at a location referred to as Weatherstone, where business partners, colleagues and associates of Kravis were entertained. The plaintiff was an employee of the defendants, as was her husband. They worked as a butler and cook at Weatherstone. Their employment compensation included a salary and the use of a private apartment on the premises of Weatherstone, in which they and their minor daughter resided. At all relevant times, the plaintiff performed her duties in a satisfactory manner.

In July, 1993, an armed security guard working for the defendants came to the plaintiff's apartment to notify the plaintiff and her husband that their employment with the defendants was terminated, effective immediately, and that they must vacate the apartment within twenty-four hours. At the time of the notification,

---

[2] The court struck all of the counts of the plaintiff's amended complaint with the exception of count seven, which the plaintiff has since withdrawn. The plaintiff's claims on appeal relate only to counts three and eight of the amended complaint. The plaintiff does not challenge the trial court's decision to strike the other five counts.

[3] Caroline Roehm, formerly Caroline Kravis, was married to Henry Kravis at the time of the events relevant to this appeal.

the plaintiff was en route to Spain to take a vacation with her daughter. Cypriano Muniz was at the apartment recovering from a planned and scheduled medical surgery performed the previous day. One month prior to this notification, the defendants represented to the plaintiff that her job was not threatened by an impending legal separation or dissolution of the defendants' marriage. In reliance on this representation, the plaintiff did not seek other employment or housing. As a result of the defendants' conduct, the plaintiff suffered a loss of income and earnings, economic losses such as loss of lodging and food, and emotional distress and anguish.

This appeal concerns only the trial court's decision granting the defendants' motion to strike the third count of the plaintiff's amended complaint seeking damages for intentional infliction of emotional distress and the eighth count of the plaintiff's amended complaint seeking damages for unfair trade practices.

"We begin by setting out the well established standard of review in an appeal from the granting of a motion to strike. Because a motion to strike challenges the legal sufficiency of a pleading and, consequently, requires no factual findings by the trial court, our review of the court's ruling . . . is plenary. See *Napoletano* v. *CIGNA Healthcare of Connecticut, Inc.*, 238 Conn. 216, 232–33, 680 A.2d 127 (1996) [cert. denied, 520 U.S. 1103, 117 S. Ct. 1106, 137 L. Ed. 2d 308 (1997)]. . . . We take the facts to be those alleged in the complaint that has been stricken and we construe the complaint in the manner most favorable to sustaining its legal sufficiency. *Bohan* v. *Last*, 236 Conn. 670, 674, 674 A.2d 839 (1996); see also *Mingachos* v. *CBS, Inc.*, 196 Conn. 91, 108–109, 491 A.2d 368 (1985). Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied. *Waters* v. *Autuori*, 236 Conn. 820, 826, 676 A.2d 357 (1996). . . . It is funda-

mental that in determining the sufficiency of a complaint challenged by a defendant's motion to strike, all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted. . . . *Amodio* v. *Cunningham*, 182 Conn. 80, 83, 438 A.2d 6 (1980)." (Citations omitted; internal quotation marks omitted.) *Doe* v. *Yale University*, 252 Conn. 641, 667–68, 748 A.2d 834 (2000).

I

We first consider the plaintiff's claim that the court improperly granted the motion to strike as to the third count of her complaint, which asserted a claim for intentional infliction of emotional distress. The elements of such a cause of action are well settled. For the plaintiff to prevail on a claim of intentional infliction of emotional distress, four elements must be established. "It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. . . . *Petyan* v. *Ellis*, 200 Conn. 243, 253, 510 A.2d 1337 (1986)." (Internal quotation marks omitted.) *Appleton* v. *Board of Education*, 53 Conn. App. 252, 265, 730 A.2d 88, cert. granted on other grounds, 249 Conn. 927, 733 A.2d 847 (1999). "Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." (Internal quotation marks omitted.) *Ancona* v. *Manafort Bros., Inc.*, 56 Conn. App. 701, 712, 746 A.2d 184, cert. denied, 252 Conn. 954, 749 A.2d 1202 (2000). All four elements must be established to prevail on a claim for intentional infliction of emo-

tional distress. *Reed* v. *Signode Corp.*, 652 F. Sup. 129, 137 (D. Conn. 1986); see also *Petyan* v. *Ellis*, supra, 254.

We conclude that the court properly held that the plaintiff in this case failed to allege sufficient facts to establish one of the elements of her claim for intentional infliction of emotional distress, namely, that the defendants' conduct was extreme and outrageous. In support of her claim that the defendants' conduct was extreme and outrageous, the plaintiff alleged that the defendants had sent an armed security guard to notify her and her husband of their termination of employment and had given them only twenty-four hours to leave the premises. This happened at a time when the plaintiff was on vacation and when her husband was recovering from a planned surgery. The plaintiff claimed that this caused her great emotional distress and anguish. While there are no Connecticut cases with facts exactly similar to those in this case, it is clear that there is liability only for "conduct exceeding all bounds usually tolerated by decent society . . . ." *Petyan* v. *Ellis*, supra, 200 Conn. 254 n.5.

In a case involving a claim for negligent infliction of emotional distress, as opposed to intentional infliction of emotional distress, in which it was alleged that the plaintiff's employment was terminated with two hours notice and that the plaintiff employee was escorted from the workplace by a security guard, the allegations were found to be insufficient to support the cause of action. *Parsons* v. *United Technologies Corp.*, 243 Conn. 66, 89, 700 A.2d 655 (1997). The elements of negligent and intentional infliction of emotional distress differ as to the state of mind of the actor and not to the conduct claimed to be extreme and outrageous. *Parsons*, therefore, is instructive because the conduct alleged in the complaint in that case, even though it did not involve the right to occupy an apartment, is

virtually identical to the conduct alleged to have been extreme and outrageous in the present case.

Here, the court relied on several cases from other jurisdictions with similar facts to conclude that the facts alleged by the plaintiff did not amount to conduct that was extreme and outrageous. See *Cox* v. *Keystone Carbon Co.*, 861 F.2d 390, 396 (3d Cir. 1988) (employee's termination on day he returned to work after triple bypass surgery did not constitute extreme and outrageous conduct); *Freeman* v. *Kansas State Network, Inc.*, 719 F. Sup. 995, 1000 (D. Kan. 1989) (termination of plaintiff's employment three days after she gave birth and on day she returned home from hospital did not constitute extreme and outrageous conduct).

In this case, it is not alleged that the defendants or their security guard threatened the plaintiff or acted in a derogatory or demeaning manner toward her. As previously noted, the plaintiff was not present when the security guard came to notify her of the termination of her employment.[4] "The mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior"; (internal quotation marks omitted) *Parsons* v. *United Technologies Corp.*, supra, 243 Conn. 89; and does not give rise to a claim for the *negligent* infliction of emotional distress. Furthermore, while the fact that the plaintiff was losing the right to use her apartment, in addition to being terminated from her employment, may have made the defendants' conduct more distressing to the plaintiff, that fact fails to establish that the defendants' conduct was extreme and outrageous. Because the occupation of the apartment was incidental to the employment and was presumably arranged because it

---

[4] No claim is made by the plaintiff arising from the intentional infliction on her of emotional distress because of the defendants' treatment of her husband. See *Agis* v. *Howard Johnson Co.*, 371 Mass. 140, 146–47, 355 N.E. 2d 315 (1976).

was convenient for the purpose of employment, it is difficult to separate the termination of the employment from the termination of the occupancy. We conclude that the allegations of count three of the plaintiff's amended complaint are insufficient to allege a cause of action for intentional infliction of emotional distress.

II

We next consider whether the court properly granted the defendants' motion to strike the plaintiff's CUTPA claim. The plaintiff's amended complaint alleged that the acts of the defendants constituted unfair trade practices in violation of CUTPA. To state a claim under CUTPA, the plaintiff must allege that the actions of the defendant were performed in the conduct of "trade or commerce." General Statutes § 42-110b; *Quimby* v. *Kimberly Clark Corp.*, 28 Conn. App. 660, 669, 613 A.2d 838 (1992). The trial court properly held that an employment relationship does not constitute trade or commerce for purposes of CUTPA. See id., 670.

The plaintiff, however, alleges that she had a landlord-tenant relationship with the defendants pursuant to the Landlord and Tenant Act (act), General Statutes § 47a-1 et seq., and thus falls within the scope of CUTPA. The plaintiff does not claim that she was wrongfully evicted or that any statute relating to summary process was violated. She limits her claim to the assertion that the allegations of count eight of her complaint state a cause of action for a CUTPA violation, and she seeks damages for that violation.

We begin our analysis by observing that the events that are alleged to have occurred took place in 1993. The plaintiff cites General Statutes § 47a-30, claiming that it specifically provides for the protection of an individual's rights to due process when an employment relationship gives rise to a tenancy. The language of § 47a-30 refers to "any domestic servant" as described

in General Statutes § 47a-36. That statute refers to domestic servants "to whom the [dwelling] space is provided as part or all of their compensation and who are employed for the purpose of rendering services in connection with the premises of which the dwelling space is a part . . . ." The language in § 47a-30 referring to "any domestic servant . . . as described in subsection (b) of section 47a-36," however, was added to the statute in 1995 pursuant to Public Acts 1995, No. 95-247, § 4, after the events with which we are concerned. Also, § 47a-30 relates to the eviction of domestic servants when such servants have failed to vacate the premises in which they are residing after employment has been terminated, and § 47a-36 applies to occupancies to which the stay of execution provisions are inapplicable. We, therefore, do not consider those statutory provisions as relevant to our decision in this case.

"Whether the defendant is subject to CUTPA is a question of law, not fact." *Connelly* v. *Housing Authority*, 213 Conn. 354, 364–65, 567 A.2d 1212 (1990). This review concerns statutory construction and the application of the statutes to the allegations of the plaintiff's complaint to determine if the plaintiff has stated a cause of action. Statutory construction involves a review of the words used in the statute, the legislative history and policy background of the statute and the relationship of the statute to existing legislation and common-law principles relating to the same general subject matter. *Babcock* v. *Bridgeport Hospital*, 251 Conn. 790, 819, 742 A.2d 322 (1999). The plaintiff alleges that she is a tenant within the meaning of the act because she occupied a dwelling owned by the defendant to the exclusion of all others pursuant to a rental agreement and, as such, has a cause of action under CUTPA.

General Statutes § 42-110a (4) defines "trade" or "commerce" to include "the sale, or rent or lease . . . of any . . . property . . . real, personal or mixed

. . . ." Our Supreme Court has held that a private cause of action exists under CUTPA for a violation of the statutes governing landlords and tenants. *Conaway* v. *Prestia*, 191 Conn. 484, 491, 464 A.2d 847 (1983) (renting of uninhabitable apartments to fifty-five tenants in four apartment buildings without certificates of occupancy offended public policy and was within purview of CUTPA). The relevant question for our review, therefore, is whether the court properly concluded that the plaintiff failed to allege facts to support the existence of a tenancy relationship cognizable under CUTPA.

In determining whether a practice violates CUTPA we use the criteria of whether a practice offends public policy or comes within some established concept of unfairness, whether the practice is immoral, unethical, oppressive or unscrupulous or whether it causes substantial injury to consumers, competitors or other businessmen. *Associated Investment Co. Ltd. Partnership* v. *William Associates IV*, 230 Conn. 148, 155, 645 A.2d 505 (1994); *Daddona* v. *Liberty Mobile Home Sales, Inc.*, 209 Conn. 243, 254, 550 A.2d 1061 (1988).

CUTPA embraces a broader standard of conduct more flexible than traditional common-law claims and does not require proof of intent to deceive, to mislead or to defraud. *Associated Investment Co. Ltd. Partnership* v. *William Associates IV*, supra, 230 Conn. 158. A violation may be established by showing either an actual deceptive practice or a practice that violates public policy. Id., 156.

Section 47a-1 (l) defines a "tenant" as a "person entitled under a rental agreement to occupy a . . . premises to the exclusion of others or as is otherwise defined by law." Not every person occupying premises to the exclusion of others does so pursuant to a rental agreement as defined in § 47a-1 (l). When premises are occupied pursuant to an employment agreement, the

existence of a lease is not necessarily proven nor is a tenancy established. See *Catropa* v. *Bargos*, 17 Conn. App. 285, 290, 551 A.2d 1282, cert. denied, 210 Conn. 811, 556 A.2d 609 (1989).

The relationship of the plaintiff and the defendants does not, according to the allegations of the plaintiff's amended complaint, indicate that the use and occupancy of the apartment was anything other than incidental to and allowed for the purpose of the plaintiff's employment. In fact, the allegations indicate that the use and occupancy of the apartment was given only for the purpose of the employment. See *Guiel* v. *Barnes*, 100 Conn. 737, 740–43, 125 A. 91 (1924). Such an arrangement is not necessarily a tenancy but may be a license in real property. A license in real property is a personal, revocable and unassignable privilege to enter land for a limited purpose without giving rise to any possessory interest in the land, which allows an exercise of the right only within the scope of the consent given. *State* v. *Allen*, 216 Conn. 367, 380, 579 A.2d 1066 (1990). It may be an exclusive right, not possessed by others. *State* v. *Grant*, 6 Conn. App. 24, 30, 502 A.2d 945 (1986). Unlike a lease, a license in real property is the privilege to act on the land of another, without obtaining any interest in the property. *Clean Corp.* v. *Foston*, 33 Conn. App. 197, 203, 634 A.2d 1200 (1993).

There is no Connecticut case other than *Guiel* that discusses the law concerning a situation in which an individual is employed and occupies a dwelling on premises incidental to the employment. Other jurisdictions, however, have resolved the question of whether a tenancy arises. The general rule is that when the occupancy is incidental to the employment, the relationship is not that of landlord and tenant. *Moreno* v. *Stahmann Farms, Inc.*, 693 F.2d 106, 107 (10th Cir. 1982); *Kwong* v. *Guido*, 129 Misc. 2d 211, 212, 492 N.Y.S.2d 678 (Civ. Ct. 1985); *Dobson Factors, Inc.* v. *Dattory*, 80

Misc. 2d 1054, 1055, 364 N.Y.S.2d 723 (Civ. Ct. 1975); *Huus* v. *Ringo*, 76 N.D. 763, 772, 39 N.W.2d 505 (1949); *Eaton* v. *R. B. George Investments*, 254 S.W.2d 189, 196 (Tex. Civ. App. 1951), rev'd on other grounds, 152 Tex. 523, 260 S.W.2d 587 (1953). The right to occupy the premises ceases when the employment terminates. *Miracle* v. *Stewart*, 278 Ky. 158, 163, 128 S.W.2d 613 (1939).

The plaintiff has not alleged a rental agreement embodying the terms and conditions concerning the use and occupancy of the dwelling unit. Except for the allegation that she was given the use of a private apartment on the defendants' premises as part of her compensation as a cook, nothing is alleged as to any condition of the arrangement. There is no allegation as to the amount of "rent" paid by the plaintiff or that the value of the occupancy is deducted from wages otherwise due. Furthermore, the plaintiff has not alleged any injury to consumers, competitors or other businessmen or that any public interest was thwarted. *Federal Trade Commission* v. *Sperry & Hutchinson Co.*, 405 U.S. 233, 244–45 n.5, 92 S. Ct. 898, 31 L. Ed. 2d 170 (1972). Nor has the plaintiff alleged a deceptive practice or specified how CUTPA was violated.

Not every relationship, even assuming a landlord-tenant one, comes within the terms of CUTPA. There must be some nexus with a public interest, some violation of a concept of what is fair, some immoral, unethical, oppressive or unscrupulous business practice or some practice that offends public policy. We cannot find such allegations in the plaintiff's complaint. We conclude that the allegations of the plaintiff in count eight of her complaint are insufficient to allege a cause of action under CUTPA.

The judgment is affirmed.

In this opinion the other judges concurred.